IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CD ALSTON,

       Plaintiff,               No. CIV S-11-2281 GEB GGH PS

   vs.

COUNTY OF SACRAMENTO, et al.,

       Defendants.        <u>ORDER AND</u>

                              <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

       Plaintiff is proceeding pro se and in forma pauperis in this action, which was referred to the undersigned by E.D. Cal. L.R. 302(c)(21), pursuant to 28 U.S.C. § 636(b)(1). Presently pending before the court is defendants' motion to dismiss plaintiff's first amended complaint, which was originally filed on February 23, 2012 and subsequently noticed for hearing on April 19, 2012.  (Dkt. Nos. 16, 17.)  On March 19, 2012, plaintiff filed an opposition to the motion, and on April 6, 2012, defendants filed a reply brief.  (Dkt. Nos. 22, 23.)  Subsequently, on April 12, 2012, the motion was submitted on the record without oral argument.  (Dkt. No. 24.)

       After reviewing the papers in support of and in opposition to defendants' motion, the court's record in this matter, and the applicable law, the court now FINDS AS FOLLOWS:

\\\\\

BACKGROUND

The background facts are taken from the operative first amended complaint, unless otherwise noted.  (See First Amended Complaint, Dkt. No. 8 ["FAC"].)

On September 29, 2010, plaintiff was sitting in her vehicle at the park reading a book when defendant Kossow, a Sacramento County deputy sheriff, blocked in plaintiff's vehicle with her patrol car, approached plaintiff's vehicle, and asked her for identification.  (FAC ¶¶ 3, 7, 17.)  Plaintiff alleges that Kossow apparently drove by approximately three times and looked at plaintiff for an extended amount of time before approaching plaintiff.  (FAC ¶ 45.)  After furnishing her identification, plaintiff asked whether she had done something wrong and Kossow told her that she could not hang out at the park.  (FAC ¶¶ 3, 18.)  Kossow further asked plaintiff about her personal life, legal status, and financial resources, and insisted that plaintiff call her home state of Pennsylvania to inform them of her whereabouts.  (FAC ¶¶ 3, 19-20.)  According to plaintiff, Kossow then pulled out her phone, called the state of Pennsylvania, and demanded that plaintiff tell Pennsylvania that she was in California.  (FAC ¶ 21.)  Kossow further asked whether plaintiff was on probation, parole, or whether she had any warrants out for her arrest. (FAC ¶ 22.)  When plaintiff inquired as to what law she had supposedly violated, plaintiff was told that she was not allowed to have her feet up on the dashboard in her vehicle.  (FAC ¶¶ 23-24.)

At some point, defendant Short, another Sacramento County deputy sheriff, also arrived at the scene.  (FAC ¶ 3.)  Kossow and Short ran a search of plaintiff's name and license plate, and when plaintiff attempted to exit her vehicle, she was instructed to stay in her car. (FAC ¶ 30.)  Kossow and Short later instructed plaintiff to go home or she would be given a ticket.  (FAC ¶¶ 3, 25.)  Plaintiff claims that she was detained and harassed by the deputy sheriffs for about 45 minutes.  (FAC ¶¶ 3, 26.)

Subsequently, Kossow and Short allegedly filed a false report stating that plaintiff was verbally uncooperative and argumentative.  (FAC ¶ 27.)  In turn, plaintiff filed a complaint

1   against officers Kossow and Short with the Sacramento County Sheriff Department, and she

2   claims that defendants Matt Morgan (a lieutenant in the Sacramento County Sheriff Department

3   Bureau of Professional Standards tasked with investigating complaints against deputy sheriffs)

4   and Scott Jones (the sheriff of the Sacramento County Sheriff Department) refused to investigate

5   her citizen's complaint.  (FAC ¶¶ 9, 11, 40-41.)  She also alleges that Morgan stated that Kossow

6   and Short acted according to policy and in good faith.  (FAC ¶ 57.)

7          On August 29, 2011, plaintiff filed the instant action for damages primarily

8   alleging liability for constitutional violations under 42 U.S.C. § 1983 and for related state law

9   tort claims.  (Dkt. No. 1.)  Subsequently, on November 14, 2011, the court dismissed plaintiff's

10   original complaint with leave to amend pursuant to 28 U.S.C. § 1915.  (Dkt. No. 7.)  Thereafter,

11   on December 6, 2011, plaintiff filed a first amended complaint.  (Dkt. No. 8.)  The first amended

12   complaint names Kossow, Short, Scott Jones (the Sacramento County Sheriff), Morgan, the

13   Sacramento County Sheriff Department Bureau of Professional Standards, the Sacramento

14   County Sheriff Department, and the County of Sacramento as defendants.[1]  On December 13,

15   2011, the court ordered service with the first amended complaint on all named defendants, except

16   the Sacramento County Sheriff Department Bureau of Professional Standards, which the court

17   held was simply a sub-department within the Sacramento County Sheriff Department.  (Dkt. No.

18   9.)

19          The instant motion to dismiss followed.

20   DISCUSSION

21          In considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim

22   upon which relief can be granted, the court must accept as true the allegations of the complaint in

23   question, Erickson v. Pardus, 551 U.S. 89, 94 (2007), and construe the pleading in the light most

---

24

25          [1] Plaintiff has named the individual, non-entity defendants in both their individual and official capacities.  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  Accordingly, all

26   further references to the individual, non-entity defendants relate to the individual capacity claims.

1    favorable to the plaintiff, see Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  However, to avoid

2    dismissal for failure to state a claim, a complaint must contain more than "naked assertions,"

3    "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell

4    Atlantic Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).  In other words, "[t]hreadbare recitals

5    of the elements of a cause of action, supported by mere conclusory statements do not suffice."

6    Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   Furthermore, a claim upon which the court can

7    grant relief must have facial plausibility.  Twombly, 550 U.S. at 570.  "A claim has facial

8    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

9    inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

10          Before turning to an analysis of each individual substantive claim raised by

11   plaintiff, the court first addresses defendants' argument that certain individual and entity

12   defendants should be dismissed from the case.

13                     Defendant Sacramento County Sheriff Department

14          Defendants correctly argue that defendant Sacramento County Sheriff Department

15   is an improper party to the action, because it is merely a department or subdivision of the local

16   government entity properly named as a party, in this case the County of Sacramento.  See Pellum

17   v. Fresno Police Dep't, 2011 WL 350155, at *2 (E.D. Cal. Feb. 2, 2011); Vance v. County of

18   Santa Clara, 928 F. Supp. 993, 996 (N.D. Cal. 1996) (noting that the term "persons" for purposes

19   of section 1983 does not encompass municipal departments); Stump v. Gates, 777 F. Supp. 808,

20   816 (D. Colo. 1991) ("naming a municipal *department* as a defendant is not an appropriate

21   means of pleading a § 1983 action against a municipality.")  To the extent that plaintiff asserts

22   state law claims against the Sacramento County Sheriff Department, it remains true that it is a

23   superfluous party to the litigation, because as a municipal department, it cannot be held liable for

24   damages separate from the County of Sacramento.  Therefore, defendant Sacramento County

25   Sheriff Department should be dismissed with prejudice as an improper party.

26   \\\\\

1         <u>Defendants Scott Jones and Matt Morgan</u>

2         Defendant Scott Jones is the sheriff of the Sacramento County Sheriff

3 Department.  (FAC ¶ 9.)  Defendant Matt Morgan is a lieutenant in the Sacramento County

4 Sheriff Department Bureau of Professional Standards tasked with investigating complaints

5 against deputy sheriffs.  (FAC ¶ 11.)

6         Plaintiff asserts claims for constitutional violations pursuant to 42 U.S.C. § 1983

7 and state law claims against these defendants.  With respect to the constitutional claims, the Civil

8 Rights Act provides as follows:

9           Every person who, under color of [state law] . . . subjects, or causes
          to be subjected, any citizen of the United States . . . to the
10           deprivation of any rights, privileges, or immunities secured by the
          Constitution . . . shall be liable to the party injured in an action at
11           law, suit in equity, or other proper proceeding for redress.

12 42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

13 actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

14 Monell v. Department of Social Servs., 436 U.S. 658, 692 (1978); Rizzo v. Goode, 423 U.S. 362

15 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

16 meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

17 omits to perform an act which he is legally required to do that causes the deprivation of which

18 complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

19         Liberally construed, plaintiff's first amended complaint essentially seeks to hold

20 defendants Jones and Morgan liable under 42 U.S.C. § 1983 on theories of supervisory liability

21 for the actions of Kossow and Short, failure to investigate plaintiff's complaint, and conspiracy.

22 However, for the reasons discussed below, the first amended complaint does not cure the

23 deficiencies of the original complaint with respect to these claims as previously outlined in the

24 court's screening order pursuant to 28 U.S.C. § 1915.

25 \\\\\\

26 \\\\\\

*Supervisory Liability*

With respect to supervisory liability, the court previously notified plaintiff that supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior.  Therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Importantly, supervisors cannot be held liable in their individual capacities unless a causal connection is established between the acts alleged to have breached a constitutional duty and the harm allegedly suffered by plaintiff.

> A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989). "[A] plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under section 1983 *as long as a sufficient causal connection is present* and the plaintiff was deprived under color of a federally secured supervisorial." *Redman*, 942 F.2d at 1447 (internal quotation marks omitted).
>
>  "The requisite causal connection can be established ... by setting in motion a series of acts by others," id. (alteration in original; internal quotation marks omitted), or by "knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury," *Dubner v. City & Cnty. of San Francisco*, 266 F.3d 959, 968 (9th Cir.2001). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir.1998) (internal alteration and quotation marks omitted).

Starr v. Baca, 652 F.3d 1202, 1207-1208 (9th Cir. 2011) (emphasis added); see also Jones v. Williams, 297 F.3d 930, 937 (9th Cir. 2002).  In addition, the Ninth Circuit has again emphasized that the pleading of supervisorial liability is subject to the Iqbal standards.  Chavez v.

1   United States, No. 10-17659 (9th Cir. June 20, 2012).  Thus, there must be facial plausibility in a

2   plaintiff's allegations that some action/inaction on the part of a supervisor *caused* her alleged

3   constitutional injury.

4          As an initial matter, there is no indication that Morgan had any supervisory

5   responsibility (beyond the authority to perform an internal investigation, discussed below) for

6   Kossow and Short.  Moreover, even assuming for the moment that Kossow and Short violated

7   plaintiff's constitutional rights during the detention, the first amended complaint makes clear that

8   Jones and Morgan were not at the scene and thus did not personally participate in the detention.

9   Indeed, plaintiff alleges that Jones and Morgan only became aware of the incident when she filed

10  a citizen's complaint.  Thus, there are no facts suggesting that these defendants ordered the

11  detention, or knew about it but failed to prevent it.

12         Plaintiff claims that Morgan later stated that Kossow and Short acted according to

13  policy and in good faith.  (FAC ¶ 57.)  However, plaintiff does not articulate how these general

14  expressions of confidence in the officers' compliance with the law, *made after the fact*, caused

15  the alleged unreasonable detention.  Furthermore, Jones appears to have been named as a

16  defendant solely due to his position as Sacramento County Sheriff.  Plaintiff's vague allegations

17  that Jones disseminated unconstitutional policies, endorsed illegal police methods or customs,

18  and "harbors policies that are unconstitutional and destructive to the community" (FAC ¶¶ 9, 54,

19  60) are entirely conclusory and patently insufficient to state a claim against Jones.

20         Thus, plaintiff fails to specifically allege any causal link between defendants Jones

21  and Morgan to the alleged constitutional violations by Kossow and Short sufficient to hold these

22  defendants liable under a theory of supervisory liability.  Plaintiff was previously advised of the

23  legal requirements to state a claim under a theory of supervisory liability and failed to cure the

24  identified deficiencies upon being granted leave to amend.  Moreover, given the lack of

25  connection between these defendants and plaintiff's detention, it seems implausible that the

26  claim could be cured by further amendment.  Therefore, plaintiff's 42 U.S.C. § 1983 claim

1  against these defendants on the theory of supervisory liability should be dismissed with

2  prejudice.

3                                    *Failure to Investigate*

4          Plaintiff further alleges that Jones and Morgan refused to investigate her citizen's

5  complaint against Kossow and Short in violation of her Due Process rights under the Fourteenth

6  Amendment.[2]  The Fourteenth Amendment to the United States Constitution provides that a state

7  shall not "deprive any person of life, liberty, or property, without due process of law."  As an

8  initial matter, plaintiff fails to provide any authority for the proposition that she has a valid

9  property interest[3] in, or an entitlement to, an internal investigation of her complaint.  The court is

10  unaware of any federal law governing the internal disciplinary affairs of a county sheriff

11  department, and plaintiff does not even point to any particular state law addressing the matter.

12          Moreover, even if state law does somehow create an entitlement to an internal

13  investigation, that does not mean that it constitutes a property interest for purposes of the Due

14  Process Clause.  See Town of Castle Rock v. Gonzalez, 545 U.S. 748, 766 (2005) (holding that a

15  plaintiff did not have a property interest under the Due Process Clause in police enforcement of a

16  restraining order against her husband).  As the U.S. Supreme Court noted in Town of Castle

17  Rock with respect to enforcement of restraining orders, the performance of an internal

18  investigation does not "resemble any traditional conception of property," does not "have some

19  ascertainable monetary value," and has only an indirect and incidental effect on plaintiff.  Town

20  of Castle Rock, 545 U.S. at 766-68.  The focus of such an investigation would obviously be the

21  internal discipline of the deputy sheriffs involved.  Even if the court accepts plaintiff's contention

22

23          [2] Plaintiff actually alleges that defendants Jones and Morgan's failure to investigate

24  violates her Due Process rights under the Fourth Amendment.  However, because that makes no
   sense in the context of the facts alleged, the court construes the allegation as asserting a violation
25  of plaintiff's Due Process rights under the Fourteenth Amendment.

26          [3] It seems clear that no life or liberty interest can be reasonably invoked with respect to
   the internal investigation at issue here.

1   that the failure to investigate places her at further risk of future constitutional violations, a

2   somewhat speculative assertion at that, it does not change the indirect and incidental nature of

3   any such consequences.  Even though the consequences of the police's failure to enforce the

4   restraining order in Town of Castle Rock were dire, resulting in the death of that plaintiff's

5   children, the U.S. Supreme Court nonetheless found the benefit to the plaintiff of restraining

6   orders' enforcement to be too indirect and incidental to constitute a property interest under the

7   Due Process Clause.  Id. at 767-68.

8          Therefore, the court concludes that plaintiff does not have a protected property

9   interest in an internal investigation of her complaint for purposes of the Due Process Clause of

10  the Fourteenth Amendment, and as such, defendants Jones and Morgan cannot be held liable

11  under that theory.  Accordingly, further leave to amend this claim against these defendants would

12  be futile and it should be dismissed with prejudice.

13                                     *Conspiracy*

14         Plaintiff also alleges that Morgan and Jones conspired with Kossow and Short to

15  deprive plaintiff of her constitutional rights in violation of 42 U.S.C. § 1983.  To state a claim for

16  conspiracy under 42 U.S.C. § 1983, plaintiff must plead specific facts showing an agreement or

17  meeting of minds between the defendants to violate her constitutional rights.  Woodrum v.

18  Woodward Cty., 866 F.2d 1121, 1126 (9th Cir. 1989).  Plaintiff must also show how an actual

19  deprivation of her constitutional rights resulted from the alleged conspiracy.  Id.  Because a

20  conspiracy claim under 42 U.S.C. § 1983 requires proof of subjective intent, it is subject to a

21  heightened pleading standard.  Turner v. County of Los Angeles, 18 Fed. App'x 592, 596 (9th

22  Cir. 2001) (citing Branch v. Tunnell, 937 F.2d 1382, 1386 (9th Cir. 1991) and Buckey v. County

23  of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992)).

24         Here, plaintiff entirely fails to allege any facts regarding Jones's involvement in

25  the alleged conspiracy.  Additionally, beyond alleging in conclusory fashion that Morgan

26  condoned illegal detention by his general statements of confidence in the good faith conduct of

1   the deputy sheriffs, plaintiff does not allege any facts that would support an inference of an

2   agreement between Morgan and the deputy sheriffs, and a subjective intent, to violate plaintiff's

3   constitutional rights.  Nor can plaintiff allege such an agreement, given that Jones and Morgan

4   only learned of the incident when plaintiff later filed her citizen's complaint.  Additionally, there

5   is no indication that Jones or Morgan ordered or authorized the detention.  Plaintiff's "cover up"

6   allegations appear to be merely another variation on her argument that she had a constitutional

7   right to an internal investigation, a claim that the court has already rejected for the reasons

8   discussed above.

9           Accordingly, the court finds that plaintiff's conspiracy claim under 42 U.S.C. §

10  1983 against defendants Jones and Morgan is frivolous and implausible and should be dismissed

11  with prejudice.

12                              *State Law Claims*

13          The first amended complaint also purports to state claims for negligence and

14  intentional infliction of emotional distress against defendants Morgan and Jones.  Even assuming

15  that any administrative claims statutes were complied with, these claims lack merit.

16          Under California law, "to prevail in an action based upon a defendant's alleged

17  negligence, a plaintiff must demonstrate that the defendant owed the plaintiff a legal duty, that

18  the defendant breached the duty, and that the breach was a proximate or legal cause of his or her

19  injuries." Ambriz v. Kelegian, 146 Cal. App. 4th 1519, 1530-31 (2007).  To the extent that

20  plaintiff claims that Jones had a duty to disperse policies that are constitutional, plaintiff fails to

21  provide any authority for the proposition that this is a cognizable duty owed to her as an

22  individual and which she has standing to enforce by virtue of a personal negligence claim against

23  Jones.  Moreover, beyond conclusory allegations, plaintiff entirely fails to allege how Jones

24  breached such a duty.  Plaintiff further alleges that Jones and Morgan had a "duty to investigate

25  police misconduct."  (FAC ¶ 36, 57, 68.)  Again, plaintiff identified no right under the

26  Constitution, federal law, or state law to an internal investigation of her complaint that can form

10

1   the basis of an individual tort claim.  It is essentially an internal disciplinary matter.  The

2   appropriate vehicle to address the underlying alleged constitutional violations by Kossow and

3   Short is plaintiff's claims pursuant to 42 U.S.C. § 1983, as discussed below.

4           Plaintiff's claim for intentional infliction of emotional distress against Morgan

5   and Jones is equally frivolous.  To state a prima facie case for intentional infliction of emotional

6   distress, a plaintiff must plead facts showing "(1) extreme and outrageous conduct by the

7   defendant with the intention of causing, or reckless disregard of the probability of causing,

8   emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3)

9   actual and proximate causation of the emotional distress by the defendant's outrageous conduct."

10  Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982).  For conduct to be "outrageous" it

11  "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."

12  Id.  The first amended complaint does not even remotely plead conduct by Morgan and Jones that

13  could be classified as "outrageous."  Nor does plaintiff provide non-conclusory factual

14  allegations showing how these defendants' conduct proximately caused her severe emotional

15  distress.  Because plaintiff's state law claims of negligence and intentional infliction of emotional

16  distress against these defendants are patently frivolous, they should be dismissed with prejudice.

17          In sum, all of plaintiff's claims against defendants Morgan and Jones are either

18  patently frivolous, implausible, and/or incapable of being cured through further amendment

19  within the strictures of Fed. R. Civ. P. 11.  Accordingly, the court recommends that these

20  defendants be dismissed from the case with prejudice.

21                  Defendant County of Sacramento

22          The first amended complaint purports to state a Monell claim for municipal

23  liability under 42 U.S.C. § 1983 against the County of Sacramento, based on alleged

24  unconstitutional policies and inadequate training and supervision.[4]

25

26      [4]  The first amended complaint also purports to state a Monell claim against defendant
    Sacramento County Sheriff Department and the other individual, non-entity defendants.

1    Since there is no respondeat superior liability under § 1983, counties and

2    municipalities may be sued under § 1983 only upon a showing that an official policy or custom

3    caused the constitutional tort.  Monell v. New York City Dep't of Social Services, 436 U.S. 658,

4    691-94 (1978).  Stated differently, "[i]t is only when the execution of the government's policy or

5    custom...inflicts the injury that the municipality may be held liable under § 1983."  Canton v.

6    Harris, 489 U.S. 378, 385 (1989).  "[L]ocal governments, like any other § 1983 'person,'... may

7    be sued for constitutional deprivations visited pursuant to governmental 'custom' even though

8    such a custom has not received formal approval through the body's official decisionmaking

9    channels."  Monell, 436 U.S. at 690-91.  A local governmental entity may "be liable if it had a

10   policy or custom of failing to train its employees and that failure to train caused the constitutional

11   violation.  In particular . . . the inadequate training of police officers could be characterized as the

12   cause of the constitutional tort if – and only if – the failure to train amounted to 'deliberate

13   indifference' to the rights of persons with whom the police come into contact."  Collins v. City of

14   Harker Heights, 503 U.S. 115, 123-24 (1992).

15   Furthermore, as one federal district court in California recently explained:

16   In order to withstand a motion to dismiss for failure to state a
     claim, a Monell claim must consist of more than mere "formulaic

17   recitations of the existence of unlawful policies, customs, or
     habits." Warner v. Cnty of San Diego, 2011 U.S. Dist. LEXIS

18   14312, at *10, 2011 WL 662993 (S.D. Cal., Feb. 14, 2011).  Prior
     to the Supreme Court's holdings in Twombly and Iqbal, the Ninth

19   Circuit had held that "a claim of municipal liability under section
     1983 is sufficient to withstand a motion to dismiss 'even if the

20   claim is based on nothing more than a bare allegation that the
     individual officers' conduct conformed to official policy, custom,

21   or practice.'" Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621,
     624 (9th Cir. 1988) (quoting Shah v. Cnty. of L.A., 797 F.2d 743,

22   747 (9th Cir. 1986)).  In light of Twombly and Iqbal, however,
     something more is required; mere conclusory allegations are

23   insufficient. Iqbal, 129 S. Ct. at 1949; Twombly, 550 U.S. at 557;

24   _____

25   However, for the reasons discussed above, the court has already concluded that defendant
     Sacramento County Sheriff Department should be dismissed as an improper party.  Furthermore,
     the individual, non-entity defendants cannot be liable on a Monell claim, because they are not

26   municipal entities.

1          *see also Warner*, 2011 U.S. Dist. LEXIS 14312, at *10, 2011 WL
          662993.

2

3    J.K.G. v. County of San Diego, 2011 WL 5218253, at *8 (S.D. Cal. Nov. 2, 2011).

4          In this case, plaintiff merely recites the existence of certain "illegal police

5    methods or customs that exhibits [sic] deliberate indifference and demonstrates [sic] a conscious

6    disregard for Plaintiff's constitutional rights and state law rights further subjecting Plaintiff to

7    future infringements by agents acting under color of law." (FAC ¶ 54.) Plaintiff also alleges a

8    "failure to adequately train officers in the use of force, the importance of integrity and honesty,

9    and civil rights violations" as well as "lack of supervision." (FAC ¶¶ 55, 58.) Plaintiff further

10   alleges that the County "tacitly encouraged, ratified, and/or approved of the violation of

11   Plaintiff's rights." (FAC ¶ 58.)

12         These conclusory allegations are unsupported by any specific facts. Plaintiff

13   refers to Morgan's general statement of confidence that the deputy sheriffs acted in good faith

14   and according to policy. However, given that Morgan is a lieutenant and evidently not a high-

15   ranking policymaker for the County, plaintiff fails to explain how this isolated statement by

16   Morgan, even when construed in the manner plaintiff suggests, establishes any general policy by

17   the County. Even assuming for the moment that Kossow and Short violated plaintiff's

18   constitutional rights, plaintiff has provided no specific facts outside of this incident from which

19   to infer that the County of Sacramento systematically condones or endorses unlawful detentions

20   and searches, or the filing of false police reports. Thus, plaintiff's conclusory allegations,

21   without specific supporting facts, are implausible.

22         Moreover, to the extent that plaintiff's Monell claim is premised on inadequate

23   training or supervision, "[p]roof of a single incident of unconstitutional activity is not sufficient

24   to impose liability...." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

25   Deliberate indifference is shown when "the need for more or different training is so obvious, and

26   the inadequacy so likely to result in the violation of constitutional rights, that the

1  policymakers...can reasonably be said to have been deliberately indifferent to the need."

2  Clouthier v. County of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010).  Here, plaintiff fails to

3  allege any specific facts regarding obvious deficiencies in the County's training program.  See

4  Canton, 489 U.S. at 390-91 ("That a particular officer may be unsatisfactorily trained will not

5  alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from

6  factors other than a faulty training program.")

7          In short, the facts alleged by plaintiff relate to a specific incident as opposed to a

8  pervasive problem with a specific County policy or custom.  Under the circumstances presented

9  here, the court finds it unlikely that this claim can be cured through further amendment.  This

10  conclusion is reinforced by the fact that plaintiff has filed similar lawsuits in this district against

11  various Sacramento area law enforcement agencies, several of which are pending before the

12  undersigned, containing virtually identical conclusory allegations.[5]

13          For these same reasons, even assuming that administrative claims statute

14  requirements were satisfied, plaintiff's remaining state law claims of negligence and intentional

15  infliction of emotional distress against the County of Sacramento should also be dismissed with

16  prejudice.  Plaintiff fails to allege a cognizable duty that the County breached or any outrageous

17  conduct by the County.

18          Accordingly, the court recommends that defendant County of Sacramento also be

19  dismissed from the action with prejudice.

20          Defendants Kossow and Short

21          With only claims against the primary actors, defendants Kossow and Short,

22  remaining, the court turns to an analysis of plaintiff's substantive claims against these

23  defendants.  The difficulty involved with reviewing these claims is that they are scattered

24  \\\\\

25

26          [5] See e.g. 11-cv-2077-KJM-GGH; 11-cv-2078-JAM-GGH.

throughout the complaint in a hodgepodge fashion.[6]  Plaintiff includes portions of claims in various different causes of action, and sometimes mixes federal and state law claims in one cause of action.  Therefore, instead of examining each cause of action, it is necessary to construe the complaint as a whole and determine which claims are sufficiently pled.

### *Claims under 42 U.S.C. § 1983*

Liberally construed, the first amended complaint purports to state claims under 42 U.S.C. § 1983 against Kossow and Short under three different theories – unlawful detention in violation of the Fourth Amendment (first,[7] second, and sixth causes of action), unlawful search in violation of the Fourth Amendment (sixth cause of action), and conspiracy to violate plaintiff's Fourth Amendment rights (ninth cause of action).[8]

### *(i) Unlawful Detention*

To state a claim for violation of the Fourth Amendment arising from a detention, a plaintiff must allege that the detention was without reasonable suspicion.  Florida v. Royer, 460 U.S. 491, 500 (1983).  Reasonable suspicion exists to the extent "a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot...."  Terry v. Ohio, 392 U.S. 1, 30 (1968).  Furthermore, a person is detained or "seized" within the meaning of the Fourth Amendment "only if, in view of all of the

---

[6] Although the first amended complaint ostensibly contains ten causes of action, there are no third and seventh causes of action.

[7] Plaintiff's first cause of action is labeled as "False Imprisonment - Violation of the Fourth Amendment to the U.S. Constitution: Actionable under 42 U.S.C. § 1983."  Because plaintiff does not indicate that she intends to bring a claim for false imprisonment under California law, and because the allegations in this cause of action relate to seizure of plaintiff's person, i.e. her detention, the court construes it as a claim of unlawful detention in violation of the Fourth Amendment under 42 U.S.C. § 1983.

[8] To the extent that plaintiff purports to state a claim under 42 U.S.C. § 1983 for violation of Due Process under the Fourteenth Amendment based on Kossow and Short's alleged failure to investigate suspicions of criminal activities before detaining her, such a claim is improper.  All constitutional claims resulting from an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment rather than under a substantive due process approach.  Graham v. O'Connor, 490 U.S. 386, 395 (1989).

1  circumstances surrounding the incident, a reasonable person would have believed that he was not

2  free to leave," i.e. if, "by means of physical force or a show of authority, his freedom of

3  movement is restrained." U.S. v. Mendenhall, 446 U.S. 544, 553-54 (1980).

4          Defendants argue that no Fourth Amendment detention occurred, because the

5  deputy sheriffs merely approached plaintiff's car when it was already parked, citing United States

6  v. Kim, 25 F.3d 1426 (9th Cir. 1994) (holding that the mere fact that the officer partially blocked

7  plaintiff's car was not a seizure) and United States v. Pajari, 715 F.2d 1378 (8th Cir. 1983)

8  (finding no seizure where officers did not stop the plaintiff's car, but merely parked behind his

9  car).  However, key to the holding in these cases was the fact that there was no demonstration of

10  force or authority at the time that the officers partially blocked in, or stopped behind, the

11  plaintiffs' respective cars, and that the initial questioning was consensual.  The Ninth Circuit

12  made clear that whether a plaintiff's vehicle was already parked at the time of the officer's

13  approach is not dispositive.  See Kim, 25 F.3d at 1431 ("To be sure, where officers detain an

14  already stationary suspect by hindering his future as opposed to ongoing progress, that they did

15  not stop the suspect as the term is commonly understood does not foreclose inquiry into whether

16  their conduct constitutes an investigatory stop.")

17          Here, plaintiff has pled sufficient facts, at least to survive a motion to dismiss, that

18  indicate a show of authority by Kossow and Short.  Even assuming that the initial blocking of

19  plaintiff's car did not amount to a seizure, plaintiff also alleges that Kossow and Short restricted

20  her movement by instructing her to remain in her vehicle.[9]  Furthermore, it can be reasonably

21

22      [9] Defendants cite various authorities for the proposition that, under the Fourth
Amendment, it is reasonable for an officer to require occupants of a vehicle to remain in the car

23  for officer safety.  However, while true as a general matter, this principle does not necessarily
validate plaintiff's detention, because it presumes that the initial stop or detention was supported

24  by reasonable suspicion of criminal activity.  See Bryan v. Macpherson, 630 F.3d 805 (9th Cir.
2010) (driver pulled over for not wearing seatbelt); U.S. v. Williams, 419 F.3d 1029 (9th Cir.

25  2005 (driver pulled over for violation of California Vehicle Code section 24601 requiring
illumination of rear license plate during darkness); Maryland v. Wilson, 519 U.S. 408 (1997)

26  (driver pulled over for exceeding speed limit and driving without a license tag); People v.
Castellon, 76 Cal. App. 4th 1369 (1999) (driver pulled over for driving with expired tags).  As

inferred from the tone of the alleged exchange between plaintiff and the deputy sheriffs,

including their demands that she call and speak with Pennsylvania authorities and their

subsequent threat of a ticket, that the encounter was not a consensual encounter during which

plaintiff was free to leave.  Moreover, in her opposition brief plaintiff also indicates that when

Kossow approached plaintiff she activated her patrol car lights.  While this fact is not currently

alleged in the complaint, plaintiff would certainly be allowed to allege this fact in any further

amendment to the complaint.  In short, there are sufficient factual issues regarding whether the

incident amounted to a detention or seizure for purposes of the Fourth Amendment that preclude

resolution of this matter on a motion to dismiss.

Additionally, assuming a detention or seizure occurred, plaintiff alleges that

Kossow had no reasonable suspicion for detaining her, because she was sitting in her vehicle at

the park reading a book and did nothing wrong.  Defendants' argument that Kossow had

reasonable suspicion to detain plaintiff because she had an out-of-state driver's license is

unpersuasive for two reasons.  First, Kossow only discovered the out-of-state driver's license

after she had already allegedly blocked in plaintiff's vehicle and activated her patrol car lights.

Second, although it is true that the California Vehicle Code requires a person to obtain a

California driver's license within 10 days of establishing residence in California, see Cal. Veh.

Code § 12505(c), plaintiff claims that she remains a resident of Pennsylvania and is currently

displaced.[10]  (FAC ¶ 5.)  Therefore, there are also factual issues regarding whether there was

reasonable suspicion to detain plaintiff, if a detention occurred.

\\\\\

_____

discussed further below, the court is unable to find, as a matter of law for purposes of a motion to
dismiss, that Kossow had reasonable suspicion to detain plaintiff.

[10] Cal. Veh. Code § 12505 defines residency as follows: "...residency shall be determined
as a person's state of domicile.  'State of domicile' means the state where a person has his or her
true, fixed, and permanent home and principal residence and to which he or she has manifested
the intention of returning whenever he or she is absent." Cal. Veh. Code § 12505(a)(1).

It may well be that, with further development of the facts in discovery, Kossow and Short can show that no detention occurred or that they had a reasonable suspicion for detaining plaintiff.  People cannot claim they have been "seized," simply because police question them.  Moreover, it could be that the police in this case were properly investigating improper loitering in a park area.  However, these are factual issues inappropriate for resolution on a motion to dismiss, in the context of which the plaintiff's factual allegations must be taken as true.  Accordingly, the court recommends that defendants' motion to dismiss the claim under 42 U.S.C. § 1983 against Kossow and Short for violation of the Fourth Amendment under a theory of unlawful detention be denied.

*(ii) Unlawful Search*

Plaintiff alleges that Kossow and Short conducted an unlawful search in violation of the Fourth Amendment when they ran a search of her vehicle registration (license plate) and name, made inquiries regarding her financial information and living situation, and demanded that she call her home state of Pennsylvania.  (FAC ¶¶ 30, 50-51.)

A search cannot be unlawful for purposes of the Fourth Amendment unless the person had a reasonable expectation of privacy with respect to the object of the challenged search.  See California v. Ciraolo, 476 U.S. 207, 211 (1986) (citing Katz v. U.S., 389 U.S. 347 (1967)).  The Ninth Circuit has already held that a license plate check of a license plate in plain view does not constitute a search under the Fourth Amendment.  U.S. v. Diaz-Castaneda, 494 F.3d 1146, 1150 (9th Cir. 2007).  The Ninth Circuit reasoned people do not have a reasonable expectation of privacy with respect to their license plates, because they are located on the exterior of the vehicle, in plain view, and specifically intended to convey information about a vehicle to law enforcement authorities.  Id. at 1151.  Because plaintiff's car was parked in a public place (a park) and her license plate was in plain view, the search of her license plate did not amount to an unlawful search.

\\\\\

1    The search of plaintiff's name in the law enforcement database is a somewhat

2    closer question, because Kossow and Short apparently obtained plaintiff's name from her

3    driver's license (or identification card).  In Diaz-Castaneda, the Ninth Circuit also held that "[t]he

4    police may ask people who have *legitimately been stopped* for identification without conducting

5    a Fourth Amendment search or seizure...People do not have a reasonable expectation of privacy

6    in their driver's license or state ID card (or the identification numbers contained by those

7    documents) once they hand them over to police officers who *legitimately asked for them*."  Diaz-

8    Castaneda, 494 F.3d at 1152-53 (emphasis added).  However, as discussed above, for purposes of

9    this motion to dismiss, the court concludes that plaintiff has stated sufficient facts to show that

10   there was no reasonable suspicion to detain her in the first place.  As such, it follows that Kossow

11   and Short also supposedly had no legitimate reason to demand to see plaintiff's identification.

12   The Ninth Circuit in Diaz-Castaneda made clear that they were not addressing the "different

13   factual circumstance of a police officer *improperly* obtaining a person's driver's license or state

14   ID card and then running a check of the document."  Id. at 1153 n.1 (emphasis in original).

15   Therefore, contrary to defendants' argument, the holding in Diaz-Castaneda does not definitively

16   foreclose plaintiff's unlawful search claim based on the driver's license check.

17       Nevertheless, the court concludes that an unlawful search claim is not viable,

18   because plaintiff cannot have a reasonable expectation of privacy with respect to the information

19   located on her driver's license, including her name.  In Diaz-Castaneda, the Ninth Circuit

20   specifically characterized the information on drivers' licenses as "non-private."  Diaz-Castaneda,

21   494 F.3d at 1153.  Indeed, this information is located on a government-issued document and is

22   routinely requested by law enforcement during traffic stops and even by private entities such as

23   banks, check cashing facilities, airports, etc.  Importantly, whether an initial stop or detention is

24   lawful or not does not change the essential non-private character of the information on the

25   driver's license.  Accordingly, the driver's license check cannot support plaintiff's unlawful

26   search claim under the Fourth Amendment.  Of course, an improper demand for identification,

1    unsupported by the requisite reasonable suspicion for a <u>Terry</u> stop, and a subsequent driver's

2    license check may further support plaintiff's claim for unlawful detention.  <u>See</u> e.g. <u>U.S. v.</u>

3    <u>Lopez</u>, 443 F.3d 1280, 1282, 1286 (10th Cir. 2006) (holding that defendant was seized and

4    unlawfully detained in violation of Fourth Amendment when police officer approached him on

5    the street, requested identification, and then held his driver's license while running a computer

6    check without reasonable suspicion).  However, because plaintiff cannot claim a reasonable

7    expectation of privacy in her driver's license information, including her name, the driver's

8    license check was not an unlawful search under the Fourth Amendment.[11]

9            Finally, Kossow and Short's inquiries regarding plaintiff's finances and living

10   situation do not amount to a search under the Fourth Amendment.  <u>U.S. v. Shabazz</u>, 993 F.2d

11   431, 436 (5th Cir. 1993) (noting that mere questioning is not a search under the Fourth

12   Amendment, but that questioning may be related to whether a detention, or scope of detention, is

13   lawful).  This questioning, along with their demand that plaintiff call Pennsylvania authorities,

14   simply do not amount to a search for purposes of the Fourth Amendment.

15           Therefore, plaintiff's 42 U.S.C. § 1983 claim for violation of the Fourth

16   Amendment under a theory of unlawful search should be dismissed.  However, because the

17   court's previous screening order did not substantively analyze plaintiff's unlawful search claim,

18   the court concludes that plaintiff should be provided with one final opportunity to amend her

19   complaint to cure this claim.  If plaintiff elects to amend this claim, plaintiff shall not base her

20   claim on any facts related to the license plate search, driver's license/name check, or mere

21   questioning regarding her finances, living situation, and other personal information.  Plaintiff

22   shall allege whether any personal items or property were physically searched by Kossow and/or

23

24      [11] On a suppression motion in a criminal case where the driver's license check led to
     further inculpatory information or evidence, the distinction may well be academic, because if the
     initial stop and detention was found to be unlawful, subsequent evidence would likely be
25   suppressed as fruit of the poisonous tree.  However, because plaintiff in her section 1983 action
     attempts to assert liability on the separate theories of unlawful detention and unlawful search, the
26   court must necessarily draw the distinction between the theories here.

1   Short, e.g. purse, bags, inside of car, etc., if she can do so in good faith within the strictures of

2   Fed. R. Civ. P. 11.

3                                          *(iii) Conspiracy*

4           In support of her conspiracy claim under 42 U.S.C. § 1983 against Kossow and

5   Short, plaintiff merely alleges that Kossow and Short conspired to deprive plaintiff of her

6   constitutional rights, drove by plaintiff's vehicle about 3 times before detaining her, and then

7   concocted a false justification for the illegal detention.  (FAC ¶¶ 64.)

8           As noted above, to state a claim for conspiracy under 42 U.S.C. § 1983, plaintiff

9   must plead specific facts showing an agreement or meeting of minds between the defendants to

10  violate her constitutional rights.  Woodrum v. Woodward Cty., 866 F.2d 1121, 1126 (9th Cir.

11  1989).  Plaintiff must also show how an actual deprivation of her constitutional rights resulted

12  from the alleged conspiracy.  Id.  Because a conspiracy claim under 42 U.S.C. § 1983 requires

13  proof of subjective intent, it is subject to a heightened pleading standard.  Turner v. County of

14  Los Angeles, 18 Fed. App'x 592, 596 (9th Cir. 2001) (citing Branch v. Tunnell, 937 F.2d 1382,

15  1386 (9th Cir. 1991) and Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992)).

16          Here, plaintiff's allegation that Kossow and Short conspired to deprive her of her

17  constitutional rights is wholly conclusory and unsupported by any specific facts regarding an

18  agreement between Kossow and Short, and a subjective intent by them, to violate her

19  constitutional rights.  Furthermore, plaintiff's complaint is also internally inconsistent, because

20  although she alleges in her ninth cause of action that Kossow and Short drove by her vehicle

21  about 3 times before detaining her (FAC ¶ 64), she alleges elsewhere that Kossow initially

22  detained her and that Short only arrived at the scene later (FAC ¶ 3), thereby undercutting her

23  claim that these defendants conspired to detain her in violation of her constitutional rights.

24          Accordingly, plaintiff's conspiracy claim under 42 U.S.C. § 1983 against Kossow

25  and Short should be dismissed, but with leave to amend.  Because the court's prior screening

26  order did not substantively address the elements of a conspiracy claim, plaintiff should be

1   allowed a final opportunity to plead specific facts in support of the claim's elements (as outlined

2   above) and to clear up the factual inconsistencies in her current complaint with respect to this

3   claim, provided that she can do so in good faith within the strictures of Fed. R. Civ. P. 11.

4                                           *Abuse of Process*

5            In her fifth cause of action, plaintiff attempts to state an abuse of process claim

6   against Kossow and Short for violation of the Fourth Amendment under 42 U.S.C. § 1983.  She

7   alleges that these defendants "employed legal process for unlawful objectives" and that they

8   abused their authority to rid the community of persons that they personally deemed undesirable.

9   (FAC ¶ 44.)

10           It is unclear whether an abuse of process claim may even be maintained under 42

11  U.S.C. § 1983, since abuse of process is a state law tort.  See Campbell v. City of Bakersfield,

12  2006 WL 2054072, at *21 (E.D. Cal. Jul. 21, 2006); Newsome v. McCabe, 256 F.3d 747, 751

13  (7th Cir. 2001) (noting that tort of malicious prosecution under section 1983 is not available

14  when an adequate opportunity exists to pursue a state law claim).  Nevertheless, regardless of

15  whether it is stated under 42 U.S.C. § 1983 or under state law, plaintiff's abuse of process claim

16  is fatally deficient.  "Process is action taken pursuant to judicial authority.  It is not action taken

17  without reference to the power of the court.  Thus, serving upon plaintiff a false notice that a

18  bench warrant had been issued is not process, because in making the false statement defendant

19  took no action pursuant to court authority."  Adams v. Superior Court, 2 Cal. App. 4th 521, 530

20  (1992).  In this case, there was no "process" involved, because Kossow and Short were not acting

21  pursuant to judicial authority.  There was no action pending and the deputy sheriffs were not even

22  executing a warrant.  As such, their alleged actions, even if assumed to be true, do not qualify as

23  "abuse of process."  Therefore, this claim should be dismissed with prejudice.

24                          Intentional Infliction of Emotional Distress

25           As noted above, to state a prima facie case for intentional infliction of emotional

26  distress ("IIED"), a plaintiff must plead facts showing "(1) extreme and outrageous conduct by

the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982).  For conduct to be "outrageous" it "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id.

Here, plaintiff alleges that the incident at issue "lead Plaintiff to hide-out in her room for several months and to only go out in public for necessities.  Plaintiff's way-of-life has changed and she no longer feels safe doing the things she has once enjoyed."  (FAC ¶ 70.) However, none of the conduct alleged qualifies as being "so extreme as to exceed all bounds of that usually tolerated in a civilized community."  Even if plaintiff's detention were unconstitutional, it was relatively short and did not involve any violence or drawn weapons. Plaintiff claims to be embarrassed by the public detention, but under California law, "[l]iability for intentional infliction of emotional distress does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Kelley v. Conco Companies, 196 Cal. App. 4th 191, 215 (2011).

Furthermore, to the extent that plaintiff bases her claim on emotional distress purportedly suffered as a result of the allegedly false statements in the police report, that portion of the claim is barred, because statements in a police report are entitled to an absolute privilege under Cal. Civ. Code § 47.  See Podesta v. City of San Leandro, 2005 WL 2333802, at **6-7 (N.D. Cal. Sept. 21, 2005) (citing Johnson v. Symantec Corp., 58 F. Supp. 2d 1007 (N.D. Cal. 1999) and Hagberg v. California Federal Bank FSB, 32 Cal. 4th 350 (2004)); Ferrin v. Bias, 2004 WL 5375474, at *7 (C.D. Cal. Nov. 17, 2004); Bullock v. City of San Rafael, 1994 WL 621975, at **2-3 (N.D. Cal. Oct. 27, 1994); see also Ciampi v. City of Palo Alto, 790 F. Supp. 2d 1077, 1106 (N.D. Cal. 2011) ("Conduct that is privileged may not form the basis for an IIED claim.").
\\\\\

1    For these reasons, the court recommends that plaintiff's IIED claim be dismissed

2    with prejudice.

3    Negligence

4    In support of her negligence claim against Kossow and Short, plaintiff alleges that

5    Kossow and Short "negligently detained Plaintiff without any suspicion of criminal activity" and

6    breached their duties "to investigate suspicions of criminal activities before detaining a citizen

7    and restricting her freedom" and not to be accusatory or threatening.  (FAC ¶ 33.)

8    Although plaintiff uses the words "negligent" and "negligently," the conduct

9    alleged is intentional and wholly inconsistent with a negligence claim.  Jones v. Tozzi, 2006 WL

10   1582311, at *15 (E.D. Cal. June 2, 2006).  This is clear from plaintiff's allegations that "the

11   illegal detention was used to harass, embarrass, and deprive Plaintiff of her constitutional rights,"

12   that Kossow and Short "searched for a reason to unjustly deprive Plaintiff of her constitutional

13   rights," that their actions were "done to cause Plaintiff harm," and that they were "hoping to find

14   criminal activity during the detention."  (FAC ¶¶ 34-35.)

15   In its previous screening order pursuant to 28 U.S.C. § 1915, the court specifically

16   instructed plaintiff regarding the necessary elements to plead a cause of action for negligence

17   under California law, including duty, breach, causation, and damages.  (See Dkt. No. 7 at 6.)

18   However, although plaintiff alleges an array of duties, such as a duty "to investigate suspicions of

19   criminal activities before detaining a citizen and restricting her freedom" and a duty to "not be

20   accusatory or threatening" (FAC ¶ 33), plaintiff provides no authority that these duties even exist

21   under California state law or common law.  Moreover, the alleged "breaches" of these duties

22   appear to be entirely duplicative of the constitutional violations alleged in plaintiff's claims under

23   42 U.S.C. § 1983.  In any event, the court finds that plaintiff's allegations are no more than "an

24   attempt to cast intentional conduct as a negligence claim."  Beijing Tong Ren Tang (USA), Corp.

25   v. TRT USA Corp., 2010 WL 98957, at *3 (N.D. Cal. Jan. 5, 2010).

26   \\\\\

Because plaintiff has already had an opportunity to amend her complaint to state a proper negligence claim and because it appears implausible that plaintiff will be able to do so in light of the intentional nature of the conduct alleged in this case, the court recommends that plaintiff's negligence claim against Kossow and Short be dismissed with prejudice.

### Further Amendment of the Complaint

In accordance with the above, the court will recommend that defendants' motion to dismiss be granted with respect to all claims, except for plaintiff's claim against Kossow and Short under 42 U.S.C. § 1983 for violation of the Fourth Amendment under a theory of unlawful detention. The court will also recommend that plaintiff be given leave to amend her 42 U.S.C. § 1983 claims against Kossow and Short for violation of the Fourth Amendment under theories of unlawful search and conspiracy, and that the remaining claims and defendants be dismissed with prejudice.

Assuming that the district judge adopts this court's findings and recommendations, any second amended complaint shall set forth separate causes of action for each of plaintiff's surviving claims against defendants Kossow and Short, i.e. claims for: (1) unlawful detention in violation of the Fourth Amendment under 42 U.S.C. § 1983; (2) unlawful search in violation of the Fourth Amendment under 42 U.S.C. § 1983; and (3) conspiracy to violate plaintiff's Fourth Amendment rights under 42 U.S.C. § 1983.[12] Plaintiff shall not include any references to other statutes, laws, or constitutional provisions in these causes of action, shall not include claims that have been dismissed with prejudice, and shall not combine claims within a single cause of action.

\\\\\

\\\\\

---

[12] Obviously, if plaintiff determines that she is unable to plead facts in support of a particular claim in good faith and within the strictures of Fed. R. Civ. P. 11, she may omit such claim from the second amended complaint.

CONCLUSION

For the reasons outlined above, IT IS HEREBY ORDERED that:

1. Further amendment of the complaint is not allowed until final resolution of the motion to dismiss by the district judge.

2. Any formal discovery in this matter is stayed pending final resolution of the motion to dismiss by the district judge.

IT IS ALSO HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss (dkt. no. 16) be granted with respect to all claims, except for plaintiff's claim against defendants Kossow and Short under 42 U.S.C. § 1983 for violation of the Fourth Amendment under a theory of unlawful detention;

2. Plaintiff's claims against defendants Kossow and Short under 42 U.S.C. § 1983 for violation of the Fourth Amendment under theories of unlawful search and conspiracy to violate plaintiff's Fourth Amendment rights be dismissed with leave to amend;

3. Plaintiff's remaining claims against defendants Kossow and Short be dismissed with prejudice;

4. Defendants County of Sacramento, Sacramento County Sheriff Department, Matt Morgan, and Scott Jones be dismissed from the action with prejudice; and

5. Plaintiff be required to file a second amended complaint in accordance with these findings and recommendations within 28 days of the district judge adopting these findings and recommendations, if they are adopted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven (7) days after service of the objections.  The parties are

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 10, 2012

<u>/s/ Gregory G. Hollows</u>
UNITED STATES MAGISTRATE JUDGE

GGH/wvr
alston.2281.mtd.wpd